May it please the court, I'm Matt Adams with Northwest Immigrant Rights Project on behalf of the petitioner Mr. Chay Ixcot. And I'll seek to preserve three minutes for rebuttal. It's undisputed that prior to the enactment of IRA-IRA, a person who had been deported and unlawfully re-entered remained eligible to apply for and be granted political asylum under 1158. Likewise, it's undisputed that at the time of the enactment of IRA-IRA, Mr. Chay had pending an affirmative application before the Immigration and Naturalization Service. The question presented then is what is the impact of IRA-IRA with its reinstatement bar on a pending asylum application? Now the Supreme Court's decision in Fernandez-Vargas makes clear that the reinstatement provision with its bar can be applied retroactively to persons who had not filed an application prior to the effective date of IRA-IRA. It does not directly address those cases where an individual had filed an application prior to that. But its language suggests that a person would have an opportunity to make a claim based on vested rights. This is a separate category of the retroactivity analysis that was not presented before the court. Now the argument that the government is making, or one of them if I understand it correctly, is that because your client had come in under a false, given a false name and been ordered to, been removed, came back in under a, I guess under his real name or under a different name, and then triggered the asylum-seeking process, he really did it wrong. He had to go back through the IJ or he had to do it in a different way. He was not forthcoming. So he didn't, he wasn't situated in the same way as someone who was here and filed an asylum without this past history. And so the hint in Fernandez-Vargas that if you have vested rights or if you've made your asylum application or adjustment application correctly, then you might have retroactive or non-retroactive effect is not applicable. Can you address that argument? Certainly. I would do that with two points. First of all, this was not the basis of the agency's decision. And the agency relied on one issue and one issue only, their interpretation that the reinstatement bar precludes any prior asylum application. There was no discussion. Right, but what we're asking is whether that reinstatement bar is applicable or not. So I think that's fair to ask you to address that. Yes, I would just note that under SEC versus Chenery, we would only review the rationale provided by the agency. And their rationale was the reinstatement bar was applicable. That seems to be the basis for their decision. Yeah, I guess my confusion is that I understand the government's argument to say since he already had this prior order under this different name, the subsequent asylum application pursuant to the regulation that they submitted in the 28-J letter should be before the board, which issued the final decision with a motion to reopen. So it was improper. So his application for asylum to DHS was not procedurally proper, and so he's not similarly situated to someone whose application was proper. That was their argument. But what happened is when he left the country, he executed that deportation order. So the board no longer had jurisdiction over that original determination. He could not have subsequently filed a motion to reopen with the board. The regulations themselves preclude any motion to reopen where someone has departed from the country. So the agency reassumed jurisdiction of any asylum claim that he had. And accordingly, for the next 16 years, the agency held on to that, renewing his employment authorization. Just so that I make sure I understand, your argument is that whatever jurisdiction the IJ had before he left the country, went back to, I guess, to Guatemala. When he left and came back, then the IJ no longer had jurisdiction, and so his application to DHS was procedurally proper. They might have denied it because of this past history, but the application itself was procedurally proper. Is that? That's exactly right. Okay, thank you. And that happens all the time. Just this last month, I represented an individual who had filed an adjustment application while he was in proceedings before the immigration court. And so initially, the agency didn't have jurisdiction, but once we terminated the removal proceedings, the agency then assumed jurisdiction and just this week approved his application. And so once he had returned, it was no longer a matter before the board or which the board could even entertain a motion to reopen. I think it's important to note that the Supreme Court's analysis in Fernandez-Vargas, especially in footnote 10, explicitly lays out that this was not a case, Fernandez-Vargas, of an individual who had already filed applications, and that if it were, there would be this other category in the retroactivity analysis of vested rights. And it wasn't just the Supreme Court's analysis, but four other circuits of this court, three prior to that decision, which were left unaltered, and another, the Tenth Circuit's decision afterwards, found that where an individual had filed their application prior to the enactment or the effective date of IRA-IRA, that it would upset settled expectations and impair vested rights were the reinstatement bar allowed to disqualify them from that pending application. Now, apart from the... Can I ask you one preliminary question, which I just want to make sure I understand? Is it your position under the current reinstatement bar that a person cannot ever apply for asylum if they're subject to the bar? The... So, if the reinstatement order is issued prior to any action by the individual, then, pursuant to the implementing regulations, they're entitled to apply for withholding of removal with its higher burden of proof, but there's no opportunity to apply for political asylum. However, if someone applies for political asylum prior to any action taken by the government to reinstate a prior order, they're still eligible. Even under the current... Even under the current statute, even disregarding the retroactivity analysis. 1158B2 lays out the disqualifying grounds for political asylum, like criminal bars and firm resettlement, but there's nothing to preclude someone who's unlawfully reentered after prior deportation for applying for asylum. And then, if the agency invokes the reinstatement bar, the agency still has to decide that asylum application. Precisely. So, it's just a question of timing? That's right. How do you read that into the statute? Where do you derive that from the statute? I think because the statute, and I'll turn to the language, says if the Attorney General finds... And so, first, there's got to be this finding by the Attorney General that the individual's subject to reinstatement, and then the bars kick in, that they're not eligible to apply for relief. And that's the interpretation that's been applied already by this Court in cases like Perez-Gonzalez and Matter of Lend. Perez-Gonzalez, though, was overruled, right? Not that section? Because in Duran-Gonzalez, at least we relied on the changed regulations by DHS or the changed Torres-Garcia. So, the substantive relief that was addressed was overruled in Perez-Gonzalez. But there's a fine difference there in that in Perez-Gonzalez, they were addressing whether the reinstatement bar precluded the adjustment application. In Duran-Gonzalez, they were deferring to a subsequent agency decision, not looking at whether the reinstatement bar precluded that, but whether the unlawful presence bars, the permanent bars under 1182A9C, precluded relief. That's the fraud entering using fraudulent documents or something. That's for reentering after having been deported or having more than a year's unlawful presence. And so they said, we now have to defer to this agency's rationale that there's this other bar that prevents them from qualifying for adjustment of status. But that decision did not address the original holding that the reinstatement bar precludes them from applying for adjustment of status. So, just clarify for me again, if under the current version of the reinstatement bar, it's your position that if an alien were to apply for asylum and then the agency invokes the reinstatement bar, he's still entitled to have his asylum application adjudicated. Why isn't your client in this kind of a similar situation? He is in that situation. Why do we have to do all this retroactivity analysis? I don't think it's necessary. I think there's two separate grounds to demonstrate why the agency should be required to adjudicate his asylum application. And, in fact, if you look at the Jerez Molina decision that was cited by the government from the Eighth Circuit, the government went through that very process. They first allowed him to have his asylum application adjudicated on the merits before they then moved to reinstate. Apart from, I would also mention that this principle is supported by the board's decision in Lynn v. Gonzales, where even though the language of the reinstatement bar would apparently preclude a motion to reopen, since that motion to reopen was filed prior to any action taken by the government, then the court ordered the agency to go ahead and adjudicate that motion to reopen first. And as Perez-Gonzales said, it's a risky proposition. If the application is denied or if the motion is denied lawfully on the merits, then the agency may move forward. On the reinstatement. Exactly. Reinstatement. And pursuant to the prior order. Invoke removal. That's right. But there's one other final ground that I think is an important error that the agency made, and that's in denying him the opportunity to apply for relief under NACARA. Now NACARA presented an opportunity for thousands of individuals like Mr. Chait from Central America whose applications had been languishing for years. And the reason NACARA is important is because NACARA statute laid out two different forms of relief, an affirmative application under Section 202 and a defensive application under Section 203. But unlike asylum, the plain language of the reinstatement bar does not affect an individual's attempt to defend themselves from reinstatement by utilizing NACARA. Now there's an obligation to do some type of registration to be eligible for NACARA. And this individual, is the record clear that he did not register? I would say the record isn't clear, but I don't think we have to hit that point because there's two alternative ways to qualify for NACARA. One, well, everyone had to be a class member, and it's undisputed he's a class member. But two, he either had to show that he had registered, or he had to show that he had an asylum application filed prior to April 1st in 1990. Now what's notable in this case is that the government relies on the underlying deportation proceedings to try to preclude the asylum application by virtue of the reinstatement bar, but it does not acknowledge those same underlying deportation proceedings to note that he had applied for asylum, and that the immigration judge and the board had denied his asylum application prior to April 1st, 1990. So he was able to show that under the second mechanism, he qualified. He did that under his false name, though. Does that make a difference? I don't believe so, but that's certainly something that the adjudicator would take into account. And, you know, the government's argued this court doesn't have jurisdiction to review a claim of NACARA. We're not asking this court to review whether he qualifies for NACARA. Rather, it was the procedural error of the agency in not affording him the opportunity to present his defensive application for cancellation of removal and adjustment of status under NACARA. He would have been able to present this evidence to an immigration judge, and then the immigration judge would have determined whether it was relevant that the original application was under a different name. Procedurally, how is that before us? It's before us simply because the reinstatement order is being utilized to preclude him from applying for NACARA. Well, if you were to prevail and the reinstatement order were vacated, if you just sent it back down, why couldn't he then attempt to apply for NACARA relief? He could. There would be no need to reach that alternative reason of attacking the reinstatement order. All right. Did you want to save a couple minutes for rebuttal? Yes. Thank you. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent and the Attorney General. This case is a reinstatement case, and this Court has recognized in Morales v. Sciarretto, the en banc court, that reinstatement is a proper, efficient agency procedure. It's notable that Petitioner did not dispute that he's subject to reinstatement. All that the agency needs to do to establish that reinstatement applies is establish the alien's identity, that he was subject to a prior removal order, and the fact that he re-entered unlawfully. None of that is in dispute here. All of that has been established. And what we have to – But if it's not retroactive under the prior law, assuming that that issue is the key one here under the prior law, his relief would not have been per se barred the way it is under the new statute. So does it make a difference that there is the – that the Department could reinstate the order under certain situations? Is he still entitled to press for relief? He was able to press for relief. He's entitled to a reasonable fear interview before an asylum officer, and that can be referred to an immigration judge. There's no further review of that, and that actually happened here. That's actually subsequent. That was only for – presumably that was only for withholding. Is that correct? Correct. Which is a different – It's a higher standard. Essentially the same factors must – It's a higher standard, though. Yes. It must demonstrate a clear probability of future harm, as opposed to past persecution presumptions, more likely than not, things like that. Could I also ask you to address – I'm sorry to interrupt you, but opposing counsel says that contrary to your 28J letter saying that the IJ had jurisdiction over his asylum application, in fact, once he left to Guatemala, his application was then properly before DHS. Is that correct in your view? It is not. The regulations that I cited and submitted with the 28J plainly include a – I take – the government's just come up with this argument after how many years? And on that point, it's important to step back and realize why this is where it is. This individual appeared before an immigration judge in 1989 and claimed to be someone else. He claimed to be from another country. He claimed to be another age. He still claims to have been 16 when he was in front of the IJ when he was, in fact, 21, as stated in his asylum application now. All of this confusion is his fault. So the question becomes, should he benefit from that? After how many years, the government giving him asylum hearings, continuing giving him further asylum hearings, you don't place any blame on the government for not sorting this out and figuring it out a few years ago? It's definitely a difficult case, Your Honor. I will concede that. It's not the prettiest procedure that I've ever seen before, definitely the most unusual that I've seen. Last night before hearing is the first time that this argument is raised by the government. It comes up in the court. I submit I gave the court and counsel at least a week on this. Isn't that wonderful? It's better than the 28th I received last night from my hearing before you all tomorrow. In any event, this gets to an issue of the agency's subject matter jurisdiction. Could you just finish answering my question, though? So why was it not proper before the DHS after he had left to Guatemala? The regulation plainly states that if a removal, if an alien has been in removal proceedings and it includes a completed removal order, a final order, jurisdiction lies with the immigration judge or the office of the immigration judge that adjudicated the prior proceedings. Even after having left for Guatemala? It doesn't contemplate that. It doesn't say anything one way or the other whether or not the order has been executed. It just contemplates that a removal order has been entered. I'd like to note also that Petitioner's counsel cites no authority for the opposite proposition. And in the face of that ambiguity, it only makes sense that the plain language of the regulation should control. And on that note, that's a question. Why doesn't the IG, in your theory, why doesn't the IG then always retain? Is that your argument is that the IG always retains jurisdiction? Always retains jurisdiction. After he enters a final order of removal? Never say never, and I'm hesitant to always say always, and I'm not sure I'd have to really. But the agency is charged with entering the reinstatement order, correct? Well, all it needs to do, again, all the agency needs to do here for a reinstatement order is. Not the IG. I mean, the IG doesn't do that. No, no, no. This is just DHS looks at whether there's a prior removal order, identify the alien, and in fact, unlawfully reentered. And that's all that happened here. Now we get into this retroactivity analysis, if the court wants to get to that point, despite Manuel Miguel saying. Well, let me just, before you explore retroactivity, do you agree with counsel's position that even under the current version of the reinstatement statute, he talked about timing? I don't. Is he correct in his analysis of the statute? It's funny, the reinstatement statute says on the one hand, no relief is available, and then you go a few provisions further, and wow, you can get withholding. Right. Well, I think that evidence is Congress's intent with this, that it's not supposed to be some ridiculously harsh thing, that if you can actually genuinely demonstrate that you're going to be subject to harm, you got a shot. You get a shot before the agency to prove your case, and he got that. And he failed to meet his burden and is subject to reinstatement. What the court discussed, the en banc court discussed in Morales v. Sghiardo, is that we need to stop the roundelay. I believe that was citing Judge Fernandez's dissenting language in a prior case. An alien can't simply step in and, as a matter of timing, reset everything. Morales v. Sghiardo recognizes that reinstatement is an important agency tool to actually get something done, and so that a removal order actually means something. It can't just be hop across the border and hop back and start over. In terms of retroactivity, if I may turn to that, because I think that's the bulk of why we're here, the question is whether or not there's a vested right, but also whether or not there's objectively reasonable reliance. And the question is, if he was relying on not being subject to reinstatement when he departed, why did he lie that he'd been subject to a prior order? Up until the day his order was reinstated, he said, I've never been ordered removed before. Why do that? If he has some reasonable expectation that that's not going to affect him, why do that? There's also no quid pro quo. This is precisely what the court discussed in St. Cyr and also in Mangreve. He gave nothing up. What did he give up by applying for asylum? There's the case Hernandez v. Anderson, where this court talked about how Arrera was impermissibly retroactive as to a 1995 naturalization applicant. She waited. She was eligible to apply for naturalization in 1990, but because of, I believe, an aggravated felony conviction, she had to wait until 1995. And then I believe she was told that she was not eligible for suspension of deportation anymore because of Arrera. It was adjudicated after Arrera. The court held that there was a reasonable reliance there. She waited to put herself out there. She gave up her basically anonymity. It's dangerous what she was doing, but she was living under the radar. And she gave that up, and that was reliance. We have no reliance here. And also this court stated in Vasquez-Zavala and also, again, in Lopez-Urrenda, that there is no settled expectation as to when the agency will adjudicate an asylum application. Well, let me just question you about the reliance issue. He didn't reveal his prior fraudulent use of a name and the order, but he did file an application under his, I guess, the name he's currently using, which would bring him to the attention of the authorities. And, in fact, what happened was they finally matched him up with the prior reentry. So he certainly relied on the availability of asylum at that point. But not to his otherwise detriment. He didn't have any expectation of a particular benefit coming from that. But also one fundamental distinction that I also need to point out on that point is that he left. Unlike any other case that has discussed retroactivity analysis post-Fernandez-Vargas, none of them ever departed the country after having applied for relief. Why does that make a difference? Manuel Miguel is the only one that did that, and the court found that there was no impermissible retroactivity because the application was improperly filed without a motion to reopen. That's the only one. Why does leaving the country and coming back, why does that make a difference to our retroactivity analysis? Well, first, it executes the removal order, so it renders the removal order final. But also under 8 CFR 208.8, an alien that departs with advance parole is considered to have abandoned their asylum application. What does advance parole mean in this context? Did he depart with advance parole? He did not. No. And this begs the question of if that's okay, if what this alien did is acceptable, what is the point of advance parole? Why would an alien get advance parole and be subject to his application being abandoned if you could have an application, not get advance parole, leave and come back, and face no harm? That's an absurd result. That's logical, but there's no real regulation that so states, right? Well, that would have to be a logical result from the reading of 8 CFR 208.8, that if you leave with advance parole, you're deemed to or considered to have abandoned your application. You get the opportunity to explain why you did what you did. That, to me, assumes that if you don't have advance parole and you leave, you've abandoned your application, period. Has the BIA? And the regulation has changed since then to expressly state that a bit more artfully. But the BIA hasn't so interpreted the statute or its regulations. You haven't cited us. Any case on point? Is that right? I believe in the Seventh Circuit has, in Domensky, I believe they talked about departing while an application is pending without parole. And, again, the regulation, as it's written today, 208.8, its current language, reflects that if you leave without advance parole, you flat out abandon your application. Also important in that context is if you depart, the main consideration if you depart with advance parole is if you go to your feared country of persecution. He did both. He departed without advance parole and departed to Guatemala, the place he fears persecution. So he would have had to explain why he did what he did. Are you arguing that that sheds light on his reliance? It does. This is all part and parcel of whether he had a vested right, whether that still existed, and also whether it was objectively reasonable. It's a common sense question. That's the inquiry of the retroactivity analysis, whether or not it makes sense to have done what he did. And he lied, persisted in lying, and he never availed himself of the motion to reopen because he didn't think he needed to. And this all could have been cured in 1993 or at any time even before RERA. He had the three-year time frame between his application and the implementation of RERA. Was there a long delay in the DHS processing his application? That is unfortunately common. I believe the Eighth Circuit discussed that. And Molina-Jerez, they gave a lot of procedural history between all the ABC and NACARA discussion as to why these cases lasted as long as they did. The best answer to that is it's prosecutorial discretion as to when the agency reaches, decides to adjudicate an application. And as the Court stated in Vasquez-Zavala and Lopez-Renner, there's no settled expectation as to when the agency will adjudicate an application. It's not ideal, obviously, to wait that long. But the ultimate question here is whether the agency can ignore its regulations. I mean, I agree it's unfortunate that it's almost, I'll call it a ten-and-a-half-hour citation of this regulation. But the agency simply, as this Court has said many times, most recently in Tijani v. Holder, it's a published case but only has the Westlaw site. It's a 2010 Westlaw 492-5449. The agency can ignore its regulations. And this is a question of what the agency has the authority to do. The agency does not have the authority to adjudicate the asylum application if it was not filed in the right place and if it wasn't filed with a motion to reopen. Also, the motion to reopen would have had to explain why he didn't seek asylum before. And he's claiming now that he did actually apply for asylum. He never actually formally filed any papers with the immigration judge. The immigration judge actually did him a favor there by not having him do the formal application because then that's a successive application, which gets into a whole other series of issues. But ultimately, the agency does not have the authority to adjudicate an asylum application if it's not properly filed. He could have done this right. Again, he had at least the three years, if not the 16, to file a motion to reopen and say, hey, I messed up on my application, I gave another name. But even to the day he was subject to reinstatement, he said, I was never ordered removed before. That just doesn't add up. That doesn't equate with any kind of reliance, any kind of settled or objectively reasonable expectation of process. Of course, no further questions? Thank you. Thank you. The agency, prior to this 20-D letter, has never claimed that it did not have the authority to adjudicate the asylum application because it was filed initially with INS, whereas initially it could have been filed with the BIA. As we noted, as a practical matter, applications are routinely filed with wrong offices. There's many different branches of the agency, and back then this was all under the Department of Justice, and applications were then filtered out and sent to the right places or you waited until the individual got to that stage of the process. There's no legal authority provided by respondent to support this point, and that was not the basis of the rationale in denying the asylum application. Now, the government argues that the IJ did him a favor in not requiring any form of filing. Both the IJ and the board recognized that he had applied for asylum. Can I just go back? I'm still sort of puzzling over this, their new argument, because the DHS, the basis of their decision was that the reinstatement order was valid, and that cut off any relief. They didn't address retroactivity. They didn't address any of these issues. These are just legal arguments, so I'm not sure why SECB chainery plays any role in this, so maybe you could enlighten me on that. From my perspective, the government is now trying to provide alternative rationale, saying the application was abandoned by his departure of the country and also arguing that he filed it with one branch of the government instead of the other branch, and at that time that would have been an additional grounds to say, no, you didn't qualify for asylum. It would be no different than them arguing that he doesn't qualify because he really wasn't subjected to persecution in Guatemala. Those weren't grounds that the agency reached at that time. Instead, they said, we can't adjudicate your application under 1158 because Section 241A.5 precludes any form of relief, and so they didn't move forward and weigh any of these individual factors in this case. And I would submit that, as a consequence, the government is unable now to proffer this as a substitute rationale to justify their decision. And moreover, when you look at the merits of that like we did, the regulation expressly precludes any motion to reopen where someone's been departed. It used to be under 8 CFR 3.23, and now it's at 1003.23. It's the departure bar that a motion to reopen can't be applied. So the regulations make clear, excuse me, that the jurisdiction is no longer with the board or the immigration judge once they've departed. Likewise, even the regulation that he cites, the courts already recognize he did not leave pursuant to advance parole. It doesn't apply to him. But even that regulation still provides him the opportunity to demonstrate compelling reasons for his departure. And so he would have been able to explain to either the asylum officer or the immigration judge that his three-week visit, where he went back to marry his partner, can constitute compelling reasons. And he could explain how he had to keep himself out of sight during those three weeks. Of course, the agency never reached any of these issues. The only thing that they looked at was 241.85, and they found that that creates a flat bar. Without looking at whether it was appropriately applied retroactively, without looking at whether he, since he had applied the asylum application first, he's entitled to have that application adjudicated. Okay. Thank you. Thank you. Thank you for your arguments on this interesting case, procedurally interesting case. Thank you. Matter submitted.
judges: B. Fletcher, Paez, Ikuta, Cjj